Case number 23-5180, David Rudometkin, appellant, v. United States of America. Mr. Roberts, amicus curiae, for the appellant. Mr. Dreyer, for the appellate. Good morning, Mr. Roberts. Good morning, and may it please the Court. Chuck Roberts, as amicus, in support of appellant. I'm happy to get to the procedural reincorporation issue in the case, but the crux of this appeal is FOIA Exemption 5, as the Court knows. In 2016, Congress decided to combat what it viewed as agency overuse of that exemption, and particularly the deliberative process privilege at issue here by heightening the agency's burden to justify withholdings. This Court's decisions in Reporters Committee, Machado, Amua, and Leopold explain that agencies now must concretely demonstrate foreseeable harm from release of withholdings and specifically consider whether it is possible to segregate and release as harmless any portion of those exempt withholdings. The record here falls short on both fronts. Much like the generic declaration in Reporters Committee with respect to foreseeable harm, and much like the incomplete declaration in Leopold with respect to segregability, the declarations here simply do not enable the Court to conclude that the agency correctly understood and applied the FOIA Improvement Act's heightened burden. Vigilance and remand on either ground is therefore appropriate. So even if you're correct that the declarations were too, I guess, generic, Reporters Committee says that more scanty declarations could be acceptable if the foreseeability of the harm is manifest. Why doesn't that apply here? If that were true in Reporters Committee across the board, then the four categories that Reporters Committee vacated and remanded summary judgment on would not have been entitled to vacater and remand. So the record here is not nearly as detailed either with respect to the foreseeable harm from release, which is the generic issue that Your Honor referenced, but also as to the sort of content, nature, context, all these other aspects of the documents here, particularly the ones that are not addressed in detail in the declarations, which we lay out in our brief. I mean, we're talking about sort of a sensitive personnel decision and the selection of a judicial officer. And I guess one can imagine that you might be chilled from saying negative things about someone who's about to become a judge if you know that your comments might become known to that person at some point in time. It just seems to me that this is not sort of some of the other types of agency decisions that are made, like policy decisions or things of that nature. It just seems to me this is a little bit more sensitive. And so I'm wondering why that manifest harm standard from Reporters Committee might not apply in this context. Yeah, the main, the first line response to that, I guess, as Your Honor mentioned, you're imagining those harms. If those harms are so straightforward or so simple, then the agency here very well could have put them into the record. But what we have in the record here, including the Vaughn Index describing many of these documents, aren't necessarily the sensitive sort of materials that Your Honor posited. What we have are lists of criteria, for example, that are under consideration, maybe factual information or biographical information. Those aren't necessarily the same sort of sensitive. Assume for the moment we're just talking about the recommendations, and even easier, the recommendations from the JAG to the Secretary. What, in your view, I agree there's not a ton here, but what specifically more needed to be, can you give me a sentence or two that would have solved the problem that is missing? Yeah, I would say sort of the easiest way to answer that question is actually to put side by side the declaration here with the declarations in EMUA and Machado. And you'll see that those go on for pages about much less information than here, even much less than the disparate recommendations here. Because we have recommendations by JAG officers, we have recommendations by OGC attorneys within OGC, and it's not exactly clear what role those play. And a lot of those pages are sort of explaining the context. And when it comes down to it, in those declarations, they sort of seem to make the same arguably generic statement here about what the harm is. They just say, these are recommendations, and if you disclose them, the quality of the recommendations will be harmed, and so the decision will be made. And there's less of the context around here, but that basic statement is in these declarations, isn't it? It is and it isn't. So there is the use of wood caused foreseeable harm within especially the first declaration, but then when the agency gets a second chance, it actually starts hypothesizing what harm could follow from release of these documents. And this court's decision in Machado, as explained and sort of reinforced in later decisions, makes clear that could doesn't cut it. So that's another thing that I would say the court needs to say the agency needs to change in its declarations here is not imagining or hypothesizing what foreseeable harm might flow from release of these documents, but specifically within the context of these decisions, what harms would flow. And the conditional, for example, we ought to say you need to put in writing that JAGS would fear being explicit because they're going to be, you know, practicing before this judge. So even though we might say, but it seems to me, frankly, the debate in this case is about is that so self-evident they don't need to say it? Or is there some reason they actually have to add that sentence to the declaration? So well, there's much more in this case than just the bottom line recommendation by the JAG officers. There's many other categories of documents, but even as to just the bottom line recommendation, what's withheld here are substantially all of Page's recommendations. And so it's not just the sentence I recommend or don't recommend this person. It's the entire document that contains that recommendation. And that's where the segregability analysis comes in and says we don't have a basis here to conclude that the agency went through and segregated potentially harmless exempt information. But before we get to segregability, it seems to me that, you know, the government defines the categories as the substance of the actual nominations and accompanying advice and recommendations or information within emails and internal memorandum provided by the general counsel and other attorneys advising the secretary regarding designation. Those categories, it seems, could fall into sort of a manifest foreseeable harm standard in this particular context. But to me, it's a separate issue whether the actual documents fall within these categories. So I think that there's a sort of two-step process we need to go through in determining this. And I'm not hearing yet anything, a strong argument from you about why, generally speaking, this context of personnel decisions, judicial selection, etc. might show manifest harm to the interests of this exemption. There is a separate question about where these particular documents actually fall within that. But as on a more general level, these categories and this interest, there does seem to be a connection and a manifest foreseeable harm potentially. Well, I would just say that the, first of all, the categories are inconsistent across the government declarations. We laid that out in our brief and the district just understood the entire record of 64 withholdings here to be the actual recommendations, which simply can't be the case because there's more withheld than just the bottom line recommendations. As to the specific context of recommendations or not recommendations for a judicial selection, one could imagine much information going into those recommendations or not recommendations that might be sensitive, that might not be sensitive. That burden is on the agency to put that forward, to put that into a declaration. It's not this court's burden to imagine what that context or that purpose might be. I think the comparison maybe to Reporters Committee and the particularly sensitive context of two of the categories of documents there might help the court in thinking through the manifest question that Your Honor is getting at. Those two were sort of ongoing covert FBI operations that were being discussed in the documents there, and that in combination with the agency declarations and the assertions of foreseeable harm in those declarations allowed the court to say in the context of ongoing covert FBI operations, particular national security sensitivities, we understand that the foreseeable harm here is clearer on this record than I think what we have here. I'm happy to address segregability. I have one question on that. There's certainly a technical reading of Leopold. They at least have to claim that they conducted a segregability analysis with foreseeable harm in mind. I take it that's your basic position. I wonder if in this particular case, what they've done is they did do a segregability analysis and released essentially everything that's not an opinion, right? And then they have a foreseeable harm justification for the opinions. So it seems like if we remanded for them to do a segregability analysis with foreseeable harm in mind, they would just sort of say, we already did that, or our justification already explains that everything we're withholding is already the type of thing that causes a foreseeable harm. I think that's possible, but it's equally if not more possible that another result might attain on remand. So Machado involves sort of a situation where the court sort of looked at very one type of information, one data field in these blitz forms, and said these few sentences, the agency has said that it has conducted a segregability analysis and a foreseeable harm analysis. Together, we recognize that that means that they probably don't need to add that sentence about segregability with respect to harmlessness. What we have here is substantially all of 64 pages withheld, and there may be a lot of opinions in there. There may be just an opinion and then a lot of facts and analysis going into that opinion. We don't know because they're withheld. And so it's much harder to sort of fill for the agency here than it was in Machado. And that's sort of where Leopold comes in. Leopold was all or substantially all of a document withheld. The court simply wasn't able to tell that the agency had gone in and done the segregability analysis with respect to the exempt information. And you should take the agency's declarations at their word here that they only did the segregability analysis as to exempt versus non-exempt information, not within exempt information with respect to harmlessness. You've got to remember, though, one of the justifications, exemption five, is you're trying to protect open communications and full and candid advice. And so it's hard to pick a sentence here and there because when someone is giving advice, you're thinking about how to frame certain sentences all in context. And to give any of that away is to chill it in the future. Well, if you're going to give all of what I'm saying in my advice panel this time, I'll never give it to you again. I'm not going to explain it. That's exactly what we're trying to protect against. I agree that that's the rationale for exemption five, but sort of the process point in the FOIA Improvement Act is for the agency to show its work in doing that analysis. It's for the agency to... Well, how do you show it other than showing it and you don't want to show it? Well, with respect to segregability as to harmlessness, it's for the agency to say in the record that we conducted this segregability analysis as to harmlessness. And that's what they said in the MUA declaration. That's what they didn't say in the Leopold declaration. And sort of that's the dividing line is the agency needs to show its work. Thank you. We'll give you a microphone. Good morning. May it please the court. Douglas Stryer on behalf of the United States. I want to pick up on the manifest point. And I'd go back to the Supreme Court's decision in Klamath-Water, which pointed out that the deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news. We are here talking about a FOIA request concerning the nomination and selection of an individual to be a chief judge. So the agency's declarations that we're dealing with it's primarily four paragraphs. And I recognize, as your honors pointed out, that there's not a whole lot there. And I fully recognize that's the case. However, we submit that between paragraphs eight and nine of the first declaration and paragraphs 10 and 11 of the second, the government has shown that it foresees that further disclosure would cause harm. And specifically in paragraph 11 of the second declaration on A126, the government stated, quote, the material redacted from the responsible documents was withheld because it is reasonably foreseeable that disclosure of this information would harm the full and free discussion of the nomination within the agents. So that's talking about disclosure at the level of information. It's context specific, talking about the full and free discussion of the nomination within the agency. And it is using would language, not could language. Counsel, I appreciate that argument. It certainly has some force. But if you step back and especially if you start from the premise of reading the language from Klamath, then all you ever need to say in an exemption five case is this is pre-decisional, it's deliberative, disclosing it would cause harm. And maybe, you know, you have to say this information instead of any information of this type. But, you know, Congress must have thought it was doing something when it enacted the Improvement Act and evidently was specifically concerned about exemption five withholdings. Wouldn't we basically be nullifying the statute? So I don't think that's quite the case. So reporters committee has already set out that the government can't do just that. The government does need to say more than just repeat a legal conclusion. But the government can't go that far beyond what is the interest at issue because then we're not talking about a harm that the interest is designed to protect. And so then we get into a separate issue with making sure the harm is correlated to the exemption. So we have to use the language. I have to go back to there is a presumption of regularity with government declarations. And there's a presumption that the government is faithfully fulfilling its task. And I think that while it would be insufficient to just repeat a formulaic legal conclusion, I don't think that's what we've done here. And I'd point out, you know, paragraph eight of the. Made it more explicit that we are talking about a personnel decision. We're choosing a chief judge. The people here are going to have to work with this person. There's just none of that kind of detail spelled out. And then we're left to say, well, is that manifestly obvious? And you never made a manifest argument in your brief. I mean, we did include the obvious realization language from climate. I do think we've described, but the case is said, but you never actually affirmatively argued that it was manifest from Scott. I mean, we do in our brief focus a lot on what the FOIA request is. And so I agree with your honor that I don't think we use the particular phrasing. I think the substance is there. And I mean, I we researched this. I think you can rely on whether it's manifest, even if you don't raise it. I don't think that that's something that you But it just seems to me that the declarations are pretty perfunctory. And then the briefing doesn't really make the strongest arguments. You're making our job harder. That's all I'm saying. I apologize, your honor. And I'd go back to. So in paragraph eight of the first declaration, the agency does say that release of this information, and that's referring to the of the actual nominations and accompanying advice and recommendations. So release of this information would cause harm to the secretary's decision making process as it would hamper the unfettered and candid advice of those making recommendations to the secretary. If that advice is no longer kept confidential. And there's similar attestation in the following paragraph regarding the communications from the general counsel's office. So in both cases, we are giving more of a hook, more, more context concerning the FOIA request. But at the end of the day, we are talking about a request for the materials pertaining to the nomination and selection of an individual to be chief judge. And if the government didn't say enough in its declarations, the court would remand and we would likely end up back in the same position with a declaration that would provide the additional materials you would say that are required. But we submit that that two-step process isn't necessary here. In any case, the context matters. Once you state the context, that's going to speak volumes. Yes, Your Honor. You're just setting it up. It's going to be more obvious, clearly obvious in certain kinds of cases. Once you said this involves a request with respect to, it is a personnel matter. That's obvious because you put it in context. That's your argument, right? Correct, Your Honor. So adding lots of words over and above that, it's not hurtful, I guess, but it's not really helpful. I mean, we could be like the first case you heard this morning and have an appendix that has more than 2,000 pages, but I don't think we need that here. I think that the declarations we have are fulfilling the government's burden of attesting that there is harm from further disclosure. It's using wood language. So I think this makes, arguably, it makes a lot of sense for recommendations from the JAG. That's not the only category of documents. And, for example, it looks like there's a lot of internal discussion in the GC's office. Why isn't there some value in requiring the government to say these emails were material to formulating the advice for the secretary? That is the kind of thing that was done in pages, in not 1,000 pages, but maybe two, more than one sentence in the Machado case and the Amua case. And one view in these FOIA cases is that the government wins once it puts down an explanation. So we ought to at least require them to put down an explanation. And I understand that, Your Honor. So for that, I'd refer to paragraph 9 of the first declaration, which states, and it's talking about those attorney-client communications, the recommendations, the emails within the Office of the General Counsel. And it says, public disclosure of the attorney-client communications would seriously disrupt open communication between the secretary and his attorneys, as well as deprive government decision-makers of the full and candid advice of their counsel. Indeed, disclosure of this type of deliberative memorandum would hamper the day-to-day workings of the department, as senior attorneys would no longer feel free to convey their recommendations in formal written correspondence. So that paragraph is- There's two sentences. And I'm not, this is, there are strong arguments on both sides. But those two sentences are, I don't know any way to describe them other than generic, right? You've just inserted these attorneys for employees and this information for deliberative information. Maybe that's all that's required, but it looks a lot like the explanation that was rejected in the Reporters Committee, doesn't it? Well, keep in mind, for Reporters Committee, two of the categories were found to be sufficient, and using the same generic language that was insufficient for the other four categories. It relied on that manifest. Correct, Your Honor. Yeah. So it seems, though, that even if you're correct, that based on the context, it's manifest that there's harm, the specific documents don't necessarily fall within the exception that you're trying to advocate for. Like document five, internal OGC notes regarding action memo to Secretary of Defense regarding designation. I mean, it's just unclear that that actually would contain sensitive information because we don't know if it's about an actual recommendation or the process of designation, or we don't know what that is. Same with documents six and 15, advice regarding designation. Document 21, it just seems that even if you're correct about there is foreseeable harm based on this manifest harm from the record, it's actually the specific documents, it's not clear to me that they fall within the categories that you're trying to protect, which is recommendations, you know, sensitive things about this personnel issue. Wouldn't we have to remand at least for that purpose? So, Your Honor, I'd refer then to paragraph nine of the second Harrington Declaration, which does provide additional information. So for instance, paragraph 9E, which is pages 124 on to 125, talks about document five, which Your Honor began with. And it says document five is an internal Department of Defense Office of General Counsel routing cover sheet for document six, which contains analysis and recommendations from other. It's page 124 on to 125. It's paragraph 9E as an echo of the second Harrington Declaration. So it says it's an internal DOD OGC routing cover sheet for document six, which contains analysis and recommendations from other General Counsel attorneys. So just a cover sheet. And then the following, but the attached document contains the analysis. Why is the cover sheet? So it's a routing sheet. And so in the following paragraph, paragraph 9F, it gives, because I think I would use routing sheet maybe a little differently, but I'm not in the services. A routing sheet is a document used to memorialize the staff review of a document. This document contains concurrence or non-concurrence information, as well as recommendations from the services and various members of the Secretary's staff. So I'd submit that paragraph nine does provide additional information about the documents beyond what's in the Vaughn Index. And I know that the district judge's first opinion did fault the government's Vaughn Index for being a little too conclusory. And so that's why in that second Harrington Declaration, I mean, Your Honor also pointed out document 21, that's paragraph 9G is in gulf. And it says document 21 is an information memo included in the recommendation from the General Counsel to the Secretary, which provided analysis of the requirements and considerations for appointing a new chief judge. The analysis of the requirements is unique to each candidate. So the Vaughn Index isn't the sole source of description of these documents. There is more, and it is in paragraph nine, which has a series of different sub-paragraphs. Why are 23 and 16 in 24? Why are they excludable? I'm sorry, Your Honor, I didn't hear. Collection criteria. Okay, so that's paragraph 9C is in Charlie. What document 23, why is that excluded? So this is request for input from the General Counsel to the service branch JAG seeking recommendation. The document contains selection. Starting with respect to the selection criteria. And 16 is a draft of 23. And then 24 as well, includes the departing chief judge's recommendation on the selection criteria. Why is all that excluded? Well, so this is all pre-decisional. It's all deliberative, the final decisions with the secretary. And this material goes into the ultimate decision as to who to select to be the chief judge. Yeah, I understand. But why is that somehow fit an exemption? That is, it's like a job post, the selection criteria. I understand, Your Honor. So A124, it says these documents include the outgoing chief trial judge's recommendation and biographical information for all candidates. I guess there's a recommendation, but this might be segregable. So on the question of whether this is under FOIA exemption 5, deliberate process privilege at all, what I have to go back to is that issue has been fully forfeited on appeal. So the material withheld, it's uncontested on appeal that this is pre-decisional and deliberative. As far as the merits of that documents, document 16 was in the second category of emails and internal DOD memorandum provided by the general counsel and other OGC attorneys advising the secretary regarding the designation of Colonel Watkins. You're saying the selection criteria question to the extent that that's who we're talking about, it's uncontested and therefore you don't have to really answer. Is that your answer? So you have to answer foreseeable harm. Correct. We have to be able to identify the harm that the government foresees from further disclosure of this material. Yeah. On the 23. So for document 23, this was listed in the first category. So substance of the actual nominations and accompanying advice and recommendations. And document 23, the request for input from general counsel to the servants branch, JAG seeking recommendations. So this is all material that is going into the ultimate decision as to the selection of the chief judge. And I fully recognize your honor that there could be more here. There can always be more in a FOIA case. But what we have on those documents are in those two paragraphs of the respective Harrington declarations. Okay. Thank you. You may respectfully ask the court to adjourn. Thank you. Just a few quick points on rebuttal. I'm going to have to answer any questions, but the fundamental question before the court is whether the agency correctly understood and applied the governing legal principle, the test from the FOIA Improvement Act. And this court's case is interpreting the FOIA Improvement Act to require concreteness, to avoid perfunctory, imaginative, speculative language. And it's just unclear on this record whether the agency understood and applied that governing test. In fact, it seems like the agency is continuing, sort of was continuing at this stage, business as usual, sort of the check the harm. I can sort of put in the generic rationale and that'll be good enough to get past summary judgment in a FOIA case. Congress, as Judge Garcia mentioned, must have been trying to do something with the FOIA Improvement Act. And if this court were to affirm across the board or even to affirm justice to the recommendations that are addressed in the declarations here, I think the court should be concerned that it would be causing confusion amongst the precedents that we cite, the key cases here, Reporters Committee, Machado, Amuah, sort of what falls on which side of the line, when does the district court to get involved in gap filling or to imagining or to saying this is manifest or not manifest, whether or not the government makes that argument in front of the court. It's just much simpler here to say this looks a lot like the relics of the pre-FOIA Act declarations that Congress wanted to change. Therefore, go back and try again. If it's an easy exercise, as my friend suggests, then it's an easy exercise, but Congress was targeted at the process, the agency going through the exercise and showing the work of its exercise, reviewing these documents and making sure that FOIA's strong presumption of disclosure is upheld with respect to the deliberative process privilege in particular. If there are any about the procedural reincorporation issue, I'm happy to address that. Otherwise, I would respectfully ask Baker to remand on both issues. Thank you. Mr. Roberts, you accepted the court's appointment, and we're grateful for your assistance. Thank you. Case is submitted.
judges: Pan; Garcia; Edwards